**SALA SCRATCH, Plaintiff**

**v.**

**SE'I SUA, PEPE SUA, and Son, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 6-92

August 28, 1992

Before KRUSE, Chief Justice, MATA'UTIA, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Gata E. Gurr
 For Defendants, Charles V. Ala'ilima

Plaintiff Sala Scratch seeks eviction of the defendants from her land, known as "Agasolo," located in Sogi, Vailoatai.[1] The defendants counter-claim for the value of improvements which they allege they have made to the land.

This matter was set for trial on July 23, 1992. On the day of trial, plaintiff appeared with her counsel, Gata Edwin Gurr; neither the defendants nor their counsel of record, Fai'ivae A. Galea'i, appeared. We noted on file, however, a letter from counsel Fai'ivae's office dated July 10, 1992, requesting the clerk to reschedule trial to another date. The letter, which was not filed until July 17, 1992, states that Se'i Sua was seeking medical attention in the United States and that counsel Fai'ivae was unavailable owing to a family emergency in the United States. We apprised counsel of the contents of the letter, and he objected to a continuance; he advised that his client was prepared for trial and that he had no prior notice of the letter request from Fai'ivae's office. We sustained the objection.[2]

## FACTS

---

[1] Plaintiff produced a deed to "Agasolo," which is registered with the Territorial Registrar in Land Transfers Volume IV, pages 189-90.

[2] T.C.R.C.P. 7(b)(1) requires, *inter alia*, that "[a]n application to the *court* for an order shall be by *motion* . . . ," and T.C.R.C.P. 6(d) requires, *inter alia*, that "[a] written motion . . . and *notice* of the hearing thereof shall be served not later than 10 days before the time specified for the hearing." (Emphasis added).

Plaintiff had known the defendant Pepe Sua from the days they were growing up together in the village of Sato'oapai in Western Samoa. In 1965, plaintiff moved to American Samoa and eventually established herself in Tafeta. The defendants at one time were also living in Tafeta next door to plaintiff on Maea-family property. However, a falling-out with their host in 1985 or 1986 required the defendants to move out of Maea's land. It was then that the defendant Pepe Sua approached plaintiff for help; she asked plaintiff whether they could live on her property in Sogi. Plaintiff, who had previously helped out the defendant Pepe Sua and her family on various occasions whenever the latter sought assistance, acceded to Pepe Sua's request, but on the condition that the defendants render tautua (traditional service) in return for use of land.

Agasolo was purchased in 1981 and was already developed in crops by the time the defendants moved onto it. Plaintiff testified that she had initially cleared the land with a bulldozer and maintained the same for growing crops, including vegetable gardens. After the defendants moved onto Agasolo they also planted crops themselves, and at the outset they lived in a shack which plaintiff had helped in building.

The anticipated tautua proved to be sporadic. After a while it was begrudgingly given, but towards the end of 1991, the tautua ceased as the defendants resisted service. As a result, plaintiff finally asked the defendants to vacate her land, which the defendants have apparently refused to do until plaintiff reimburses them for various claimed improvements, including the value of a house which they have since built on Agasolo.

The construction of the referenced house was commenced without plaintiff's knowledge or permission; she found out about the construction shortly after Hurricane Ofa, which occurred early in 1990, when the defendants rather boldly appeared at her place of business to buy certain building material. Plaintiff further testified that she nonetheless decided to allow the defendants to finish construction since the foundation was already complete and the defendants had agreed to her stipulation that the house would remain with the land whenever the defendants eventually left. All that plaintiff could tell us about the house was that it is a brick building of fairly good size, which she diffidently gauged at "24 x something."

*CONCLUSIONS*

55

We conclude on the foregoing that plaintiff has established grounds for eviction; the defendants' interest in the land is merely a personal license. The license, which was conditioned on continuing tautua, became revocable when that tautua ceased. The petition to evict will therefore be granted.

The next question is whether the defendants are entitled to equitable relief for improvements. "Such relief . . . is available . . . to an occupant who has made improvements in 'good faith,' *Fonoti v. Fagaima*, 5 A.S.R.2d 158 (1987); *Roberts v. Sesepasara*, 8 A.S.R.2d 124 (1988), and whose possession must have been under some color or claim of title." *Faleatua v. Tauiliili*, 19 A.S.R.2d 122 (1991). The corresponding duty to compensate is derived from the "unjust enrichment of the land owner." *Roberts v. Sesepasara, supra*, at 131.

On the record before us, the only evidence pointing to compensable improvements relates to the home erected by the defendants. Defendants' claim for crop improvements was contradicted by plaintiff's testimony that Agasolo was already agriculturally improved land when the defendants moved onto it. We so find. As to the home, the defendants were hardly good-faith improvers at the outset when they commenced building on plaintiff's land without permission. (Plaintiff remains unaware as to how the building permit was secured from the authorities in the first place without her approval as landowner.) On the other hand, plaintiff did subsequently allow the structure's completion after learning that a foundation had already been laid. While the evidence further revealed an agreement between the parties to the effect that the resulting house would remain with plaintiff upon the defendants' departure from Agasolo, it is, we feel, very apparent from the circumstances that the parties were, at the time, really contemplating a much longer presence on the land by the defendants. We conclude that these were the sort of circumstances alluded to by the Appellate Division in *Tulisua v. Olo*, 8 A.S.R.2d 169, 172 (App. Div. 1988), "where the true owner has . . . contributed to a situation in which it would be inequitable to deny compensation." However, in order to determine the value of compensable improvement, we are in need of further details on the house in question. With the procedural flexibility accorded in these cases by A.S.C.A. § 3.0242(b), we will hold a further hearing on the issue of value alone. In order to allow counsel time to secure any necessary appraisals with respect to the house, this matter will again be placed on calendar upon motion of either party. (The parties remain free, of course, to negotiate an agreement on value of the house.)

It is so ordered.